**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| GODO KAISHA IP BRIDGE 1 | § | |
| | § | |
| v. | § | Case No. 2:16-CV-0134-JRG-RSP |
| | § | |
| BROADCOM LIMITED, ET AL. | § | |

<u>**MEMORANDUM ORDER**</u>

Before the Court is Defendants Broadcom Ltd., Broadcom Corp., Avago Technologies Ltd., Avago Technologies U.S. Inc., and LSI Corporation ("Defendants")'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 64), specifically to the Northern District of California, to which Plaintiff Godo Kaisha IP Bridge 1 ("GK") filed a Response in Opposition (Dkt. No. 97), Defendants filed a Reply (Dkt. No. 101) and GK filed a Sur-Reply (Dkt. No. 104).

## I.  BACKGROUND

Plaintiff GK is a Japanese company with its principal place of business located in Tokyo. (Dkt. No. 42 at 2, para. 2). Defendants Broadcom Ltd., Avago Ltd., and Avago U.S. all have principal places of business in San Jose, California, Defendant LTI has its principal place of business in Milpitas, California, and Defendant Broadcom Corp. has its principal place of business in Irvine, California. *Id.* at 2-3, paras. 3-7.

 In its Amended Complaint (Dkt. No. 42), GK accuses Defendants of infringing six patents: U.S. Patent Nos. 6,538,324 ("the '324 patent"), 6,197,696 ("the '696 patent"), RE41,980 ("the '980 patent"), 7,126,174 ("the '174 patent"), 8,354,726 ("the '726 patent"), RE43,729 ("the '729 patent") ("the Asserted Patents").

Five of these patents – the '324 patent, '696 patent, the '980 patent, the '174 patent, and the '726 patent ("the Fabrication Patents") – are directed to semiconductor structures and

manufacturing processes. (Dkt. No. 42 at FAC at 12-30, paras. 42, 52, 62, 72, 82.) The sixth

patent – the '729 patent ("the Processor Patent") – is directed to processor instruction sets. *Id.* at

32-33, para. 92. All of the Asserted Patents were originally assigned to either Panasonic Corp. or

NEC Corp., which are both Japanese companies with headquarters in Japan. (Dkt. No. 64 at 2-3).

GK now owns the Asserted Patents. (Dkt. No. 42 at 2, para. 2).

## II.    RELEVANT LAW

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."   28 U.S.C. § 1404(a) (2006).   The first inquiry when

analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which

transfer is sought would have been a district in which the claim could have been filed."   *In re

Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the

convenience of parties and witnesses as well as the interests of particular venues in hearing the

case.  *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In

re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d

1315, 1319 (Fed. Cir. 2009).

The private factors are: (1) the relative ease of access to sources of proof; (2) the

availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case

easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198;

*TS Tech*, 551 F.3d at 1319.   The public factors are: (1) the administrative difficulties flowing

from court congestion; (2) the local interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15. Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## III. ANALYSIS

A threshold issue in the §1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Defendants argue that there is no question that this case could have been brought in the Northern District of California because each of the Defendants is subject to personal jurisdiction in that venue: specifically, four of the Defendants – Broadcom Ltd., Avago Ltd., Avago U.S.,

and LSI – have headquarters in or near San Jose, which is within the Northern District of California – and Defendant Broadcom Corp. is a California corporation with its headquarters also in California, specifically Irvine, California, such that a civil action under 28 U.S.C. § 1391(b)(1) can be brought in the Northern District of California, "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." (Dkt. No. 64 at 5-6).

GK contends that transfer is not warranted here because Defendants "substantially and inexcusably delayed filing their motion more than six months after this case was filed, a week after the close of claim construction discovery, and just one week before the deadline for the substantial completion of document production and submission of opening claim construction briefs." (Dkt. No. 97 at 1). However, because this issue involves the timing of motion practice within the overall schedule of a case, the Court will address the date when Defendants filed their present Motion to Transfer (Dkt. No. 64) when it reaches analysis of the fourth private factor ("all other practical problems that make trial of a case easy, expeditious, and inexpensive.").

In addition, GK asserts that Defendant's Motion to Transfer (Dkt. No. 64) must be denied because Defendants have failed to carry their significant burden of demonstrating that the Northern District of California is the "clearly more convenient" forum. (Dkt. No. 97 at 1, 4-5).

As a threshold matter, the Court finds that the suit could have been filed in the Northern District of California. Thus, the Court will now turn to weighing the private and public interest factors in order to ascertain if transfer to the Northern District of California is warranted here.

## A.    Private Interest Factors

### 1.    Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in

favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). This factor is still to be weighed, regardless of whether the documents are in electronic form and can be easily transported. *See Kroy IP Holdings, LLC v. Starbucks Corp., Inc.,* No. 2:13-cv-936-JRG, 2014 WL 5343168, at *2 (E.D. Tex. Sept. 30, 2014) ("Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be weighed as a private interest factor… Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is important to venue transfer analyses in patent infringement cases."). However, this factor may be accorded less weight if the documents are in easily-transportable electronic form. *See Rembrandt Patent Innovations, LLC v. Apple, Inc.,* No. 2:14-cv-0015-JRG, 2014 WL 3835421, at *2 (E.D. Tex. Aug. 1, 2014) ("[G]iven the ease in the modern era of transferring electronic data from one place to another, this factor weighs only slightly in [The Court]'s decision.").

Defendants contend that a significant portion of the relevant documents and things necessary to resolve this case (e.g. relevant documents and evidence regarding the structure, operation, function, marketing and sales – including financials – of the accused products) are located in the Northern District of California, where four of the Defendants maintain their corporate headquarters. (Dkt. No. 64 at 10). Defendants also argue that the Northern District of California provides easier access to such documents and evidence for Defendant Broadcom Corp., which is located in Irvine, California. *Id.*

Defendants state that they do not manufacture any of the accused devices, but rather purchase them from third-party "foundries" which manufacture them outside the U.S. and which include GlobalFoundries Inc., Taiwan Semiconductor Manufacturing Company Ltd. ("TSMC"), Semiconductor Manufacturing International Corp. ("SMIC") and United Microelectronics

Company ("UMC"). (Dkt. No. 64 at 3). Thus, "significant" third-party evidence exists in the Northern District of California, because files and documents in the possession of the U.S. foundry GlobalFoundries are present or accessible at its corporate headquarters in Santa Clara and other relevant documents and information exist in at least eight other foundries in the Northern District of California, which GK seeks to obtain via subpoenas. *Id.* at 10. Defendants also note that in their invalidity contentions served on GK, a number of prior art publications and prior art devices are identified as belonging to Intel Corp. ("Intel") and Sun Microsystems ("Sun"). *Id.* at 4. As a result, the Northern District of California is where evidence pertaining to certain prior art is kept, because that is the district where the headquarters of Intel and Oracle Corporation ("Oracle"), the successor to Sun, are located. *Id.* at 10. Defendants further indicate that of the seven companies that GK has engaged in licensing negotiations, five of them – AMD, Intel, Marvell, Nvidia, and OmniVision – are headquartered in the Northern District of California. *Id.* at 10-11. Therefore, Defendants aver that "significant" evidence relating to GK's efforts to license the Asserted Patents is more readily accessible in the Northern District of California. *Id.* at 10. Defendants finally mention that GK, a foreign company, is unlikely to have any relevant evidence located in this District and none of the Defendants have any facilities or employees in this District. *Id.* at 11.

In response, GK asserts that Defendants cannot dispute that the large majority of proof will be established through documents produced in electronic form, thereby obviating arguments that there is a burden on document transportation. (Dkt. No. 97 at 8). GK also points to Brad Mitchell, Defendants' Rule 30(b)(6) witness, who testified that he was not aware of any difficulties Defendants' experienced by collecting and producing documents in this District. *Id.*

at 8-9. GK further notes that Defendants, either directly or through their subsidiaries, have filed nine patent infringement suits in this District, thereby showing that they would not be inconvenienced by litigation here. *Id.* at 9.

GK also identifies substantial sources of proof within, immediately adjacent to, or otherwise closer to this District than to the Northern District of California, which include: (i) Defendants' 30(b)(6) designee testified that the Broadcom employee who interfaces most with engineers from ARM (which provides accused technology) is located in Boston, Massachusetts – closer to Texas than California; (ii) ARM, a relevant third party identified by Defendants, produced its source code in Washington, D.C., which is closer to Marshall, Texas than California; (iii) authorized distributors of the accused products exist in Texas who may have relevant sales and marketing information, such as Avnet Electronic Marketing, a Broadcom national distributor with locations in Richardson, Sugarland, and Austin, Texas; (iv) GK has subpoenaed several third parties with offices in or near this District, including GlobalFoundries (Richardson and Austin, TX), ARM Ltd. (Plana and Austin, TX), and TSMC Americas (Austin, TX); and (v) Defendants sell the accused products to many third-party customers – including HP and Dell – located in or near this District, have offices (with at least 168 employees) in this District and an international sales force.[1]

---

[1] E.g. "Cisco (facilities and offices in Irving, Richardson, Houston, San Antonio, and Lubbock, TX), Arris (facilities and offices in Austin and Houston, TX), Alcatel-Lucent (regional headquarters in Plano, TX),16 Huawei (North America headquarters in Plano, TX and facilities in Richardson, TX),17 Dell (headquarters in Round Rock, TX),18 Verizon (facilities and offices in Dallas, Irving, Richardson, and Westlake, TX),19 Apple (second-largest office complex in Austin, Texas),20 Enseo (headquarters in Richardson, TX),21 and EMC Corp. (facilities and offices in Austin, Coppell, Dallas, Houston, Richardson, and San Antonio, TX). *Id.* at 10. "Furthermore, as of the filing of the motion, Defendants had four offices in Texas, with at least 168 employees, many of whom likely have relevant evidence. Indeed, two large customers—HP and Dell—are serviced primarily out of Texas. Defendants have not proven that for each accused product there is only duplicative documentation in those locations. In addition, Defendants' corporate designee testified that Defendants maintain a sales force, another significant source of proof, throughout the United States and the world." *Id.* at 10-11.

On balance, the Court finds that this factor favors transfer, but only slightly. Although courts look to the location of the accused infringer's documents, and the bulk of Defendants' documents relevant to this case appear to be in the Northern District of California, there is no dispute that nearly all of these documents are in electronic form. The same would apply to any of GK's documents, albeit located in Texas or in the Northern District of California. Accordingly, the burden of accessing, collecting, producing or transporting documents is minimal for both parties, regardless of where those documents are from.

## 2. Availability of Compulsory Process to Secure the Attendance of Witnesses

'This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.,* 581 Fed. Appx. 886, 889 (Fed. Cir. 2014), *citing Genentech,* 566 F.3d at 1345.

Defendants assert that there are no less than nine relevant non-party corporate entities from which the Northern District of California may compel testimony at trial: GlobalFoundries, Intel, Oracle Corp., Seagate, Cypress Semiconductor, AMD, Marvell, Nvidia, and OmniVision – each of which is located 25 miles from the courthouse in San Jose. (Dkt. No. 64 at 11). Defendants additionally point out that GlobalFoundries, which is headquartered in Santa Clara, California, is also the only U.S. foundry at issue in this case, and, as GK's own disclosures recognize, is the best source of information about the details relating to its accused manufacturing processes. *Id.* at 11-12. Seagate and Cypress Semiconductor – also located in the Northern District of California – now own the businesses relating to two of the six products charted by GK in its Infringement Contentions. *Id.* at 12. Furthermore, nearly all of the targets of GK's licensing efforts – Intel, AMD, Marvell, Nvidia, and Omnivision – are subject to compulsory process in the Northern District of California. *Id.* Defendants further allege that the ability to compel testimony from Intel is particularly significant here because it is also the

developer of several key pieces of prior art (e.g., the Yonah, Prescott, Klamath, and Pentium processors) which Defendants intend to rely on to prove that at least three of the Asserted Patents are invalid. *Id.* Similarly, Oracle, the successor to Sun – which developed the processors that Defendants intend to rely upon to prove the invalidity of the '729 patent – is also located in the Northern District of California. *Id.* Defendants also identify four non-party witnesses who "are believed to possess factual knowledge of the existence, structure and operation of [Oracle or Sun]'s invalidating prior art systems" and are all based in the Northern District of California: Leslie Kohn, Carole Dulong, Millind Mittal and Michael Kagan. *Id.* Defendants lastly note that in contrast to the Northern District of California, there are no known non-party witnesses subject to the subpoena power of this District or this Court. *Id.*

In response, GK states that while Defendants contend that there are nine non-party entities over which the District of Northern California has the power to compel trial testimony, they fail to demonstrate that even one has relevant evidence. (Dkt. No. 97 at 11). For example, GK notes that four of the five entities that Defendants mention were "targets" of GK's licensing efforts – AMD, Marvell, Nvidia and OmniVision – did not end up deciding to enter into licenses with GK after negotiations, and such discussions – years after the hypothetical negotiation date here – have no bearing on damages issues. *Id.* GK also asserts that Cypress Semiconductor also has no relevant information that is non-duplicative of what Defendants already have, that Intel and Oracle allegedly have information about prior art, but despite having months to take discovery, Defendants have not shown that those entities in fact have any relevant, discoverable information in the Northern District of California, and that Defendants have not demonstrated that GlobalFoundries, which manufactures certain accused products abroad, has any relevant evidence kept at its entity in the Northern District of California. *Id.* Finally, GK argues that

Defendants' reliance on their four self-identified prior art non-party witnesses should also be given little weight because these individuals were added in Defendants' Supplemental Initial Disclosures, which was served concurrently with the present Motion to Transfer (Dkt. No. 64), "solely in a transparent attempt to bolster the connection to the transferee court." *Id.* at 11-12.

GK further mentions that there are several third parties outside the subpoena power of courts in both Districts: in particular, all of the foundries (TSMC, SMIC, UMC, and GlobalFoundries) that manufacture the accused products do so outside the U.S., and all but GlobalFoundries are headquartered in Asia, and third-party ARM, which provides relevant technology, is headquartered in the United Kingdom ("UK"). *Id.* at 12.

On balance, the Court finds that this factor also leans but slightly in favor of transfer. Both Defendants and GK have potential party and non-party witnesses who are beyond the subpoena power of either this District or the Northern District of California. Considering just the third party witnesses of both parties – which include three foundries headquartered in Asia and one company, ARM, headquartered in the UK – it does not appear that either District has absolute subpoena power over them or is clearly more convenient in this regard.

### 3. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Diamond Grading Techs. v. Am. Gem Soc'y,* No. 2:14-cv-1161-JRG-RSP, 2016 WL 1271568 (E.D. Tex. Mar. 31, 2016); *Saint Lawrence Comm. LLC v. LG Elecs., Inc.,* No. 2:14-cv-1055-JRG, 2015 WL 7854738 (E.D. Tex. Mar. 20, 2014); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). The

inconvenience to witnesses increases with the additional distance to be traveled, including additional travel time with overnight stays, an increased probability of meal and lodging expenses, and time away from their regular employment. *Portal Technologies LLC v. Yahoo! Inc.,* No. 2:11-cv-440-JRG, 2012 WL 3242205, at *4 (quoting *Volkswagen I,* 371 F.3d at 205). "A district court should [also] assess the relevance and materiality of the information the witness may provide." *Genentech*, 566 at 1343; *see also ThinkTank One Research, LLC v. Energizer Holdings, Inc.,* No. M-15-0389, 2015 WL 4116888, at *2 (E.D. Tex. July 7, 2015). However, even though there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information," the movant must still provide enough information to allow the Court to make the required assessment. *Genentech* at 1343-44.

Defendants argue that in this case, transfer to the Northern District of California would substantially reduce the cost and burden of attendance at trial for both party and non-party witnesses. (Dkt. No. 64 at 7).

For party witnesses, Defendants contend that any party witnesses for GK located in Japan would undoubtedly have lower costs and shorter travel to California, as opposed to having to travel an additional 1,500 miles to this District. *Id.* For their own party witnesses, Defendants indicate that there are 10 individuals who have overall responsibility for market research, sales, and product planning with respect to the accused semiconductor products, nearly all of which are based in San Jose, California, and that there are additional individuals knowledgeable about the technical aspects of the accused products who are primarily located in California, with some of them located in Colorado and Pennsylvania. *Id.* Furthermore, out of the nearly 8,300 U.S. employees of the Defendants, nearly two-thirds of them (over 5,100) are located in California, with more than a third of them (over 2,800) being in San Jose or offices nearby, whereas

Defendants collectively have no employees in this District and as for their 130 employees that do reside in Texas, these individuals allegedly do not have specific information or documentation relevant to the current litigation, either because their work is entirely unrelated to the accused processes and accused ARM Cortex technology (e.g. their work deals with sales and customer support), or because any knowledge they do have would be redundant of the knowledge of witnesses located elsewhere, primarily in the Northern District of California. *Id.* at 7-8. Defendants further contend that specifically, the Broadcom employees located in its Austin, Texas facility do not have relevant information because their work is focused on circuit design, not layout of the accused semiconductor products; the layout of these accused products being performed by Broadcom employees located in California, not Texas. *Id.* at 8.

For non-party witnesses, Defendants argue that the Northern District of California would be more convenient because the accused technology in this case is not that of Defendants, but rather third party foundries such as GlobalFoundries, TSMC, SMIC and UMC, which – as GK acknowledges in its Initial Disclosures, have knowledge of the "[i]nformation relating to manufacture and design of the accused products." *Id.* Defendants assert that these foundries are the only ones who know the specific details of their manufacturing processes for the accused semiconductor products and because these processes are highly sensitive, proprietary trade secrets for the foundries, even Defendants (the foundries' customers) are not provided access to the specific details of the fabrication processes used to make their devices. *Id.* Also, GlobalFoundries (who manufactures two of the three Broadcom products charted in GK's Infringement Contentions) is headquartered in Santa Clara, California (located in the Northern District of California) while TSMC, SMIC and UMC are headquartered in China, but have a U.S. subsidiary or U.S. office located in or near San Jose, California (also in the Northern

District of California) and ARM (the supplier for the accused technology involving the '729 patent) is headquartered in the UK while the headquarters of its U.S. subsidiary, ARM Inc., is located in San Jose, California. *Id.* at 8-9. Defendants finally note that GK's Initial Disclosures do not identify a single witness or any evidence that is located in this District, GK is located in Tokyo, Japan and to the best of Defendants' knowledge, the named inventors all reside in Japan, and Defendants are not aware of any relevant witnesses who reside in this District. *Id.* at 9.

In response, GK argues that because the convenience of party witnesses and U.S. employees of Defendants located in California is entitled to less weight than the convenience of identified relevant non-party witnesses, such as third-party foundries and Defendants' third-party customers of the accused products that have offices in and near this District, Defendants have not shown that the Northern District of California is "clearly more convenient" to willing witnesses than this District. (Dkt. No. 97 at 12-13). GK then points to the existence of various potential third-party witnesses that are in fact likely to be located in this District, including individuals from: (1) ARM's two offices in Texas (Plano and Austin), which have over 300 employees that perform engineering activities, among others; (2) GlobalFoundries' Texas facilities (Richardson and Austin) and TSMC's Texas facilities (Austin), which have employees whose responsibilities include integrated-circuit engineering; and (3) Huawei Technologies Co., Ltd. ("Huawei")'s headquarters in Plano (in this District), which has employees that sell or manufacture products that contain the BCM4334 accused component. *Id.* at 13. Moreover, at least 17 named inventors of prior art cited or produced by Defendants who are likely knowledgeable about alleged prior art and the differences between it and the claimed inventions currently reside in or near this District (who would be more inconvenienced traveling to the Northern District of California than this District), and of the "five potential witnesses in connection with this litigation" LSI

employee Dan Fisher cites in his Declaration, two are located in Colorado (Colorado Springs and Fort Collins), and one is located in Pennsylvania (Allentown), all of which are closer to this District than the Northern District of California. *Id.* at 13-14; *see also Id.* at 13, n. 23.

On balance, the Court finds that this factor is neutral as to transfer. Considering the potential non-party witnesses of both parties, which should be given more weight in the analysis, it appears that the inconvenience incurred by Defendants' potential non-party witnesses (individuals from any of the foundries – TSMC, SMC and UMC – based in China or San Jose/Milpitas, from GlobalFoundries based in Santa Clara, and from Arm in the UK or San Jose) in traveling from their respective locations to this District is more or less counterbalanced by the inconvenience incurred by GK's potential non-party witnesses (individuals who work in the Texas offices of ARM, GlobalFoundries, TSMC and Huawei, prior art inventors that live in or near this District and potential third party witnesses located in Colorado and Pennsylvania) in traveling from their respective locations to the Northern District of California. The calculus does not differ by much if the party witnesses from both sides are added to the equation. Therefore, the Court finds that this factor is **neutral** as to transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Defendants argue that there are no practical problems that are so significant as to weigh against transfer because this case is in its early stages; therefore, there is no expectation of judicial economy by keeping this suit in this venue. (Dkt. No. 64 at 13).

In response, GK asserts that the purpose of 28 U.S.C. § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal quotations and citation omitted). Therefore, GK argues that during Defendants' long delay in

filing their motion (which will be discussed next), the Court became familiar with the issues relating to this case and significant delay as well as waste of judicial resources would further result from the redundancy of the transferee Court having to learn about the technology, parties, contentions, discovery disputes and Court orders to date, not to mention the transferee Court having to set a new date for trial. (Dkt. No. 97 at 14). GK also avers that patent trials in this District are likely to be shorter and less burdensome than in the Northern District of California, which also counsels against transfer. *Id.*

However, GK's main argument with respect to judicial efficiency is Defendant's delay in filing the present Motion to Transfer (Dkt. No. 64), specifically, filing it on August 19, 2016, which is more than six months after this case was filed (February 14, 2016), a week after the close of claim construction discovery (August 12, 2016), and just one week before the deadline for the substantial completion of document production and submission of opening claim construction briefs (August 26, 2016). (Dkt. No. 97 at 1); *See also* Docket Control Order (Dkt. No. 34).

Thus, declaring that a motion to transfer venue under 28 U.S.C. §1404(a) must be filed with "reasonable promptness," GK argues that Defendants' failure to bring their Motion to Transfer (Dkt. No. 64) with "reasonable promptness" alone compels denial of it. (Dkt. No. 97 at 3-5), *citing Peteet v. Dow Chem. Co.,* 868 F.3d 1248, 1436 (5th Cir. 1989); *See Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.,* No. 301CV2282-L, 2003 WL 298799, at *5 (N.D. Tex. Feb. 10, 2003) ("Although a motion to transfer venue under section 1404(a) is not subject to the pleading requirement of rule 12(h), it still must be filed with 'reasonable promptness.'); *Novartis Vaccines & Diagnostics, Inc. v. Wyeth,* No. 2:08-CV-00067, 2010 WL 1374806, at *4 (E.D. Tex. Mar. 31, 2010) ("The Federal Circuit has found that, in patent cases, the 'consideration of the interest of

justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'"); *Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.,* No. 6:08CV296, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009) ("[I]f the party opposing transfer can show that the section 1404(a) transfer motion would result in prejudice solely due to the delay in bringing the motion or that the motion is a dilatory tactic, then the movant has failed to show 'reasonable promptness'"). GK further cites the case of *Ralph v. Exxon Mobile Corp.,* which states:

> Any transfer will produce some delay, and as such, Plaintiff must show that a transfer at this stage of the proceedings would cause a significant or unusual delay. *See In Re: Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir.2002) ("[I]n rare and special circumstances a factor of 'delay' or 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence."). Defendant argues that there is little chance of delay or prejudice because this is a routine Jones Act case, and the transferee court is likely to be familiar with the issues involved. The Court respectfully disagrees. Plaintiff filed his lawsuit on November 30, 2005, and the Rule 16 Conference was held on February 1, 2006. Exxon did not seek transfer until June 13, 2006, over six months after this case was filed. Trial in this case is set for October 23, 2006, a little less than three months away. A transfer at this late stage in the proceedings would work a significant hardship on Plaintiff, who would be forced to move to the end of the line in any transferee court…This factor supports retention, and outweighs all of the other factors supporting transfer. (citations omitted).

No. Civ. A. G-05-655, 2006 WL 2266258, at *4 (S.D. Tex. Aug. 8, 2006). GK also cites additional authority for its argument that Defendants' failure to bring their Motion to Transfer (Dkt. No. 64) with "reasonable promptness" alone compels denial of it.[2]

---

[2] "Fifth Circuit courts consistently deny transfer motions under the 'reasonable promptness' standard where the moving party has delayed as Defendants have here. In *Novartis Vaccines and Diagnostics, Inc. v. Wyeth*, for example, the court denied a motion to dismiss where, like here, 'the parties negotiated a docket control, discovery, and protective orders, completed initial disclosures, exchanged infringement and invalidity contentions and have proceeded through extensive document production.' 2010 WL 1374806, at *5. In another case that parallels this one, *Ralph v. Exxon Mobil Corp.,* the court denied a motion to transfer because it was brought 'over six months after [the] case was filed' and found '[a] transfer at this late stage in the proceedings would work a significant hardship on Plaintiff.' 2006 WL 2266258, at *4. Similarly, in *FTC v. Multinet Mktg., LLC*, the court denied a motion to transfer because it

GK additionally argues that Defendants were aware of nearly all – if not all – of the facts that they allege support their motion months before they filed it. (Dkt. No, 97 at 5). For example, as of the February 2016 filing of the Complaint in this action, or shortly thereafter, Defendants knew the location of their employees, their documents, the foundry manufacturers of the accused products (TSMC, SMIC, UMC and GlobalFoundries), ARM (provider of accused technology), Seagate (acquirer in 2014 of an accused product) and GK. *Id.* GK further alleges that by the time Defendants served their invalidity contentions on June 20, 2016, Defendants knew of the locations of individuals or companies with possible knowledge of alleged prior art, who comprise all the persons and entities Defendants identify with potentially relevant sources of proof. Thus, GK avers that Defendant's decision to wait until August 19, 2016 – more than six months after the complaint in this case and only one week before the substantial completion of document discovery – to file their Motion to Transfer (Dkt. No. 64) is a "clear sign of calculated delay." GK then cites many events in this case which have now passed, since as the date of this Order, the Court has already held a *Markman* claim construction hearing and issued a *Markman* Order on November 4, 2016 (Dkt. No. 104). GK additionally mentions that a transfer to the Northern District of California would require these dates to be rescheduled very far into the future and since patent cases in that District take a median of 2.4 years to get to trial, a transfer would likely mean that trial there would not be scheduled until at least 2018. (Dkt. No. 97 at 7; Dkt. No. 104 at 1, n.1).

---

was brought seven months after the plaintiff filed the action and therefore was not brought with 'reasonable promptness.' 959 F. Supp. 394, 395-96 (N.D. Tex. 1997) (internal quotations and citation omitted). The court also held that '[a] change of venue now is likely to upset the discovery and trial schedule and waste judicial resources." *Id.* Such is likely to be the result in the instant case as well.' (Dkt. No. 97 at 7).

In response, Defendants contend that their Motion to Transfer (Dkt. No. 64) was filed promptly, specifically after service of IP Bridge's infringement contentions – a period during which Defendants investigated the facts pertaining to the location of evidence and identities of witnesses relevant to the different products that have been accused of infringement by GK. (Dkt. No. 83 at 1; Dkt. No. 101 at 2, n.4). Moreover, Defendants assert that they filed their Motion to Transfer (Dkt. No. 64) only two months after the service of invalidity contentions during which time Defendants were investigating the sources of prior art and the location of non-party evidence and witnesses. (Dkt. No. 64 at 10, *citing* Ex. 32; Dkt. No. 101 at 2, n.4). Furthermore, Defendants argue that the law is also quite clear that only "in rare and special circumstances" are the factors of "delay" or "prejudice" even relevant "in deciding the propriety of transfer" and "only if such circumstances are established by clear and convincing evidence." (Dkt. No. 101 at 2), *citing In re Horseshoe,* 337 F.3d at 434. Thus, Defendants argue that GK's proof fall far short of demonstrating by clear and convincing evidence that such rare circumstances exist here.

Furthermore, Defendants argue that GK can hardly be heard to claim prejudice based on delay when it requested and was granted courtesy extensions of almost forty days to file its answering brief on this Motion to Transfer (Dkt. No. 64); Defendants say that this is particularly true when nearly all of the information that GK needed to respond to the current Motion to Transfer was available without need for any of the discovery or extensions that they sought. (Dkt. No. 101 at 4). Thus, Defendants argues that the information GK obtained by deposition was almost entirely duplicative of that provided by the Declarations and Exhibits accompanying the present Motion to Transfer, and nearly all the information GK cites to in its opposition brief (Dkt. No. 97) comes from publicly available sources. (Dkt. No. 101 at 4). Defendants concede that briefing on the transfer motion did not conclude before the Markman hearing (on October 7,

2016), but assert that they pursued their Motion to Transfer diligently and filed it with reasonable promptness. GK disputes that Defendants pursued the present motion diligently, and distinguishes the case law that Defendants also cite, in particular that the case of *In re Horseshoe* does not deal at all with the moving party's promptness, or that delay must be established by "clear and convincing" evidence, because in that case, the Fifth Circuit held that it was error for the district to deny a motion to transfer where, unlike here, all parties and witnesses resided in the transferee forum, based on concerns about delay or prejudice resulting from transfer where there was no evidence supporting such concerns; that case also did not involve the discussion of judicial efficiency or conserving judicial resources. (Dkt. No. 104 at 1-4).

On balance, the Court finds that this factor weighs heavily against transfer. As of the date of this Order, a *Markman* claim construction hearing was held (October 7, 2016), a *Markman* Order was issued by the Court on November 4, 2016 (Dkt. No. 104), the Deadline to Complete Expert Discovery is March 9, 2017, the Pretrial Conference is scheduled for May 9, 2017 and Jury Selection is on June 5, 2017. *See* Latest Docket Control Order (Dkt. No. 186).

The law is clear that if a timely motion to transfer is filed, the Court should consider the posture of the case at the time the suit was filed. However, where the motion was not filed timely, the Court may consider the time and effort invested in the case before the motion was filed. Thus, in the name of preserving judicial efficiency, as well as time, energy and money, the Court finds that this factor weighs strongly **against** transfer.

## B. Public Interest Factors

### 1. Administrative Difficulties Flowing From Court Congestion

The "speed with which a case can come to trial and be resolved" may be a factor in the transfer analysis. *Genentech,* 566 F.3d at 1347. A proposed transferee court's "less congested

docket" and "[ability] to resolve this dispute more quickly" is also a factor to be considered. *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

However, this factor is the "most speculative," and where "several relevant factors weigh in favor of [or against] transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

GK argues that this factor weighs against transfer because of this District's speedier disposition of patent cases in comparison to the Northern District of California. (Dkt. No. 97 at 15). Defendants assert that because both Districts provide for efficient and prompt disposition of patent cases and have detailed local patent rules and scheduling orders to avoid congestion and keep patent actions on track to timely resolutions, this factor is neutral to the transfer analysis. (Dkt. No. 64 at 14-15). While this factor weighs against transfer, it does so only slightly.

### 2.    Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of the chosen venue in having the case resolved there. *Volkswagen I*, 371 F.3d at 205-06. When significant connections exist between a venue and the events that gave rise to the suit, this factor weighs in favor of that venue. *In re Hoffman-La Roche Inc.,* 587 F.3d 1333, 1338 (Fed. Cir. 2009).

Defendants argue that this factor weighs in favor of transfer because the Northern District of California has significant connections to this case in that four of the five Defendants are headquartered there, and because the management, sales and marketing of the accused products is based out of those locations. (Dkt. No. 64 at 13). Defendants also assert that this District has little or no connection to the facts of this case other than the alleged sale of accused products in this District. *Id.* GK contends that because many of Defendants' customers of the accused products are based in Texas and likely have witnesses and evidence within or near this District, this factor is at a minimum neutral. The Court agrees, and also finds that the competing interests

on both sides of the equation more or less cancel each other out. Accordingly, this factor is **neutral** as to transfer.

### 3. Familiarity of the Forum With the Law that Will Govern the Case

Defendants say that the third and fourth public interest factors are neutral here. (Dkt. No. 64 at 15). GK does not seem to dispute this, because it does not even address the third or fourth public interest factors in its briefing. Thus, the Court finds this factor is **neutral** as to transfer.

### 4. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

For the same reasons provided immediately above for the third public interest factor, the Court finds this factor is **neutral** as to transfer.

## IV. CONCLUSION

Considering the foregoing, the Court finds that Defendants have not shown that the Northern District of California is a "clearly more convenient" forum for this action. As a result, the Court hereby **DENIES** Defendants' Motion to Transfer (Dkt. No. 64).

**SIGNED this 27th day of February, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE