IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Godo Kaisha IP Bridge 1, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:16-cv-134-JRG-RSP |
| | § | |
| Broadcom Limited et al., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |

## ORDER

Before the Court is Defendants' Motion to Strike Certain Assertions Under the Doctrine of Equivalents From Plaintiff's Expert Reports (Dkt. No. 196) (the "Motion"). The Motion is **DENIED**.

Defendants claim that IP Bridge violated Patent Local Rule 3-1(d) by failing to disclose certain doctrine of equivalents ("DOE") arguments prior to serving its expert reports. Rule 3-1(d) requires that parties alleging infringement identify "[w]hether element of each asserted claim is claimed to be literally present or present under the DOE in the Accused Instrumentalities" in its infringement contentions. Defendants point out that IP Bridge's infringement contentions disclose DOE arguments for some limitations but not others. They urge the Court to strike expert opinions for those DOE arguments not disclosed because a party cannot introduce theories of infringement for the first time in an expert report. *See, e.g.*, *ROY–G–BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014) ("Expert infringement reports may not introduce theories not previously set forth in infringement contentions."). Specifically, Defendants request the Court strike (1) DOE opinions relating to infringement of the "second L-shaped sidewalls" limitation in claim 1 of the '174 Patent under the doctrine of equivalents and (2) DOE opinions of relating to the "dry-etching"

limitation in claim 13 of the '696 patent and the "s is less than m" limitation in claim 21 of the '729 patent.

*First*, Defendants argue that Dr. Schubert's DOE analysis for the "second L-shaped sidewalls" limitation in Claim 1 of the '174 Patent consists of a single conclusory sentence. Plaintiff responds Dr. Schubert's doctrine of equivalents analysis for the "second L-shaped sidewalls" is the substantially the same as his analysis for the "first L-shaped sidewalls." Dr. Schubert states as much in his report. After providing evidence that the first and second L-shaped sidewalls have the "same sidewall structure," he concludes that "[s]ince the interconnection and the gate electrode have the same sidewall structure, all of the arguments above in connection with the first L-shaped sidewall limitation also apply to the second L-shaped sidewall limitation."

Defendants portray this analysis as inadequate, but the Court disagrees. The purpose of both expert reports and infringement contentions is to provide the opposing party notice. *See Smith & Nephew, Inc. v. Arthrex, Inc.*, 2010 WL 457142, at *8 (E.D. Tex. Feb. 5, 2010); *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010). To that end, Dr. Schubert may incorporate his DOE analysis of the "first L-shaped sidewalls" for the "second L-shaped sidewalls," so long as his report provides notice. It must be sufficiently clear that the expert is incorporating analysis and the analysis incorporated must be sufficiently clear. Even if the "first" and "second" sidewalls are distinct limitations and separate structures, Plaintiff's expert may refer back to his DOE analysis for a first structure corresponding to a first limitation in analyzing a second structure corresponding to a second limitation, so long as both structures are the same with respect to the asserted basis for equivalence. Here, it is clear that Dr. Schubert is incorporating his "first L-shaped" sidewall analysis and that such analysis is sufficiently clear. Dr. Schubert puts forward extensive analysis that applies to an "L-shaped sidewall," that the accused

first and second sidewalls in the accused products have the "same sidewall structure," and that "all of the arguments above in connection with the first L-shaped sidewall limitation also apply to the second L-shaped sidewall limitation. This is sufficient. To require more defeats the notice function of expert reports and infringement contentions.

    ***Second***, Defendants argue that IP Bridge introduces a doctrine of equivalents theory for the "dry-etching" and "s is less than m" terms for the first time in its expert reports. Plaintiff responds, that it did provide notice, and points to boilerplate statements in its infringement contentions as sufficient to put Defendants on notice:

> To the extent any claim limitation is found to not be literally present, IP Bridge asserts that such limitation is present under the doctrine of equivalents in each of the Accused Instrumentalities. By asserting that a claim element may be present under the doctrine of equivalents, IP Bridge does not waive its right to assert literal infringement of that claim element. Additional, exemplary information about infringement under the doctrine of equivalents is set forth in the attached claim charts.

Plaintiff relies on a single case from this district in support of its position that boilerplate reservations are adequate. *Bright Response, LLC v. Google, Inc.*, No. 2:07-CV-371-CE, 2010 WL 11056580, at *1 (E.D. Tex. July 30, 2010). In *Bright Response*, the Court held that boilerplate language was sufficient to put Defendants on notice, and thus its DOE arguments were not waived. *See id.* at *3 (E.D. Tex. July 30, 2010). More recent precedents from this district and others suggest otherwise. *See, e.g.*, *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 6:15-CV-01038, 2016 WL 7666160, at *3 (E.D. Tex. Dec. 5, 2016) ("Plaintiff's boilerplate language also does not reserve any special right for Plaintiff to assert DOE contentions at a time of its choosing."); *KI Ventures, LLC v. Fry's Electronics, Inc.*, 2014 WL 4236814, *7 (Fed. Cir. 2014); *Baltimore Aircoil Company, Inc. v. SPX Cooling Technologies Inc.*, 2016 WL 4426681, *15-*16 (D. Md. 2016); *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015); *Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*, 2011 WL 13128125, at *9 (N.D. Tex. May 4, 2011)

In light of these cases, the Court does not find that Plaintiff's boilerplate reservation provides adequate notice under the Local Rules in this case.

Plaintiff's alternative argument, however, is somewhat more persuasive.  Plaintiff argues that it should not be faulted for failing to develop its DOE theories beyond boilerplate prior to expert discovery because of fact discovery delays.  For example, with respect to the '696 patent, Plaintiff requested production of samples of the accused products, so that IP Bridge could do additional reverse engineering, but none was produced until December 12, 2016.  Plaintiff also served an interrogatory requesting information that would allow it to determine which products to reverse engineer to further develop its DOE arguments.  Plaintiff asserts that it did not receive the sample chips it needed until weeks prior to the fact discovery cutoff, and that Defendants did not fully respond to Plaintiff's interrogatory until days before the close of fact discovery.  Moreover, Plaintiff contends that similar information from Defendants' supplier Taiwan Semiconductor Manufacturing Company Limited ("TSMC") was not produced until the waning days of fact discovery.  Plaintiff's argument with respect to the '729 patent is similar.  It argues that much of the evidence it needed to develop its DOE infringement theories was produced in the final days of fact discovery.

Defendants' first response—that discovery disputes are not relevant to the analysis of whether IP Bridge complied with its obligations under the local rules—is stated without authority and is not persuasive. *See, e.g., Lighting Ballast*, 2011 WL 13128125 at *10.  Discovery disputes often explain why a party may have acted diligently notwithstanding a violation of the local rules. In this case, Plaintiff has demonstrated that delay in receiving discovery contributed in part to a failure to expound upon its conclusory DOE theories.  Defendants' second response fares no better. Defendants argue that Plaintiff's reliance on reverse engineering for the "dry-etching" elements of

the '696 patent for its initial infringement contentions undermines Plaintiff's argument that it needed discovery to further develop its DOE arguments. However, the discovery requested by IP Bridge may have facilitated additional or more detailed reverse engineering analysis or clarified what analysis IP Bridge needed to do in order to further expound upon its DOE theory.

While the discovery delays may not excuse the Local Rule Rule violation on its own, the Court is also persuaded that the prejudice from allowing Plaintiff to assert a DOE theory for the "dry-etching" and "s is less than m" terms is not substantial. Defendants had an opportunity to depose IP Bridge's experts on these DOE theories. More important, Defendants do not identify anything they would have done differently. Thus, even though the Court finds that Plaintiff failed to timely disclose its DOE theories for the "dry-etching" and "s is less than m" terms, based on the facts presented by the parties, on balance the relevant factors do not favor exclusion of any expert testimony.

The Motion (Dkt. No. 196) is **DENIED**.

**SIGNED this 27th day of April, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE